[No. 4735. Decided August 7, 1903.]

*In the Matter of the Application of* FRITZ DIETRICK *for a Writ of Habeas Corpus.*

STATUTES — REPEAL BY IMPLICATION — SETTING FORTH STATUTE AS AMENDED — GAMBLING.

Section 37 of article 2 of the state constitution, which provides that "no act shall ever be revised or amended by mere reference to its title, but the act revised or the section amended shall be set forth at full length," does not apply to cases where a later act, designed as a complete law in itself, repeals by implication a former law on the same subject, and hence Laws 1903, p. 63, making gambling a felony is not invalid by reason of the failure to set it forth as an amendment of Bal. Code, § 7260, which defines the same acts of gambling as constituting a misdemeanor.

*Original Application for Habeas Corpus.*

*Graves & Graves,* for petitioner.

*Horace Kimball,* Prosecuting Attorney, *W. B. Stratton,* Attorney General, *E. W. Ross* and *C. C. Dalton,* for respondent.

The opinion of the court was delivered by

HADLEY, J.—The petitioner applied to this court for a writ of habeas corpus. The petition states substantially that the petitioner is restrained of his liberty by the sheriff of Spokane county, in the county jail of said county, and that such restraint is because of the facts hereinafter stated. On June 16, 1903, an information was filed in the superior court of said county, by the prosecuting attorney thereof, charging that the petitioner did, on the 14th day of June, 1903, wilfully, unlawfully, and feloniously conduct and carry on therein, as proprietor, a certain game of poker, commonly called "stud poker," the same having been played and operated for checks, said

checks then and there being representatives of value, towit, representatives of money, and that said game was played, carried on, and conducted in a certain room where persons resort for the purpose of playing the same. Thereafter the petitioner was brought before said court and required to plead to said information. He thereupon entered a plea of guilty, and, on the 17th day of June, 1903, the court entered its judgment and sentence in the cause, finding petitioner guilty of the offense charged, and sentencing him as a punishment therefor to serve a term of one year in the state penitentiary. He was forthwith remanded to the custody of said sheriff, that said judgment and sentence might be carried into effect. The petition further avers that the petitioner is held upon no other charge or pretense than that above set forth. He admits that he has committed the offense charged in the information, but says that the only punishment which can be imposed therefor is a fine, as provided in § 7260, Bal. Code. He avers that he so claimed and asserted to the said superior court at the time the sentence was pronounced, but that the court disregarded his protest and sentenced him to imprisonment in the penitentiary. He alleges that the said sheriff of Spokane county will in a short time proceed to carry out said sentence, and will commit him to the custody of the warden of the penitentiary to serve out the term imposed by said court. He further says he has stood and now stands ready to pay a fine, and he prays that he may be delivered from illegal imprisonment, and that an order of final discharge shall be made herein. Upon the presentation of the petition here, it was ordered that a writ of habeas corpus should issue directed to the said sheriff of Spokane county. Such a writ was accordingly issued. The said sheriff filed his return, in which he set

up the record of the judgment in the superior court, to-
gether with the commitment remanding the petitioner to
his custody for the purpose of being delivered to the war-
den of the penitentiary. A hearing was thereafter had
upon said petition and return.

The contention of the petitioner involves the constitu-
tionality of an act of the legislature of 1903. The act
will be found in chapter 51, at pages 63 and 64 of the
Session Laws of 1903, and is entitled as follows: "An
act to prohibit the maintaining of gambling resorts, de-
claring the same a felony, and prescribing a penalty there-
for." The act itself is as follows:

"Section 1. Any person who shall conduct, carry on,
open, or cause to be opened, either as owner, proprietor,
employee, or assistant, or in any manner whatever, whether
for hire or not, any game of faro, monte, roulette, rouge
et noir, lansquenette, rondo, vingt-un (or twenty-one),
poker, draw-poker, brag, bluff, thaw, tan, or any banking
or other game played with cards, dice or any other
device, or any slot machine, or other gambling device,
whether the same be played or operated for money, checks,
credits, or any other representative or thing of value, in
any house, room, shop, or other building whatsoever, boat,
booth, garden or other place, where persons resort for the
purpose of playing, dealing or operating any such game,
machine or device, shall be guilty of a felony, and upon
conviction thereof shall be imprisoned in the penitentiary
for the period of not less than one nor more than three
years."

The claim of the petitioner is that the act is invalid for
the alleged reason that it is merely amendatory of a for-
mer act dealing with the same subject, and that as such
it does not comply with § 37, art. 2, of the state constitu-
tion, which provides that "no act shall ever be revised or
amended by mere reference to its title, but the act revised

or the section amended shall be set forth at full length."
The former act of which it is claimed the recent one is
merely amendatory was passed by the territorial legisla-
ture of 1879, and is entitled, "An act to prevent and pun-
ish gambling." Section 1 of that act is involved in the
discussion here, and will be found at page 97 of the Ses-
sion Laws of 1879, being also § 7260, Bal. Code. The
section is as follows:

"Each and every person who shall deal, [play], or
carry on, or open, or cause to be opened, or who shall con-
duct, either as owner, proprietor, employee, whether for
hire or not, any game of faro, monte, roulette, rouge-et-
noir, lansquenette, rondo, vingt-un (or twenty-one), or
poker, draw poker, brag, bluff, thaw, tan, or any banking
or other game played with cards, dice, or any other device,
whether the same be played for money, checks, credits,
or any other representative of value, shall be guilty of a
misdemeanor, and upon conviction thereof shall be pun-
ished by a fine of not more than five hundred dollars, and
shall be imprisoned in the county jail until such fine and
costs are paid: Provided, That such persons so convicted
shall be imprisoned one day for every two dollars of such
fine and costs: And provided further, That such impris-
onment shall not exceed one year: And still further pro-
vided, That any one who shall carry on any chuck-a-luck,
bunko, strap, sling, panel house, or other swindling games
shall be deemed guilty of a felony, and upon conviction
shall be imprisoned in the penitentiary not exceeding five
years for such offense."

The petitioner argues that the new act deals with the
same subject as the above quoted section of the former
one, is merely amendatory thereto, and is invalid because
it does not set forth at full length the former section as
amended as provided by the constitutional provision quoted
above. The question, therefore, to be determined is, does

the new act come within the said constitutional require-
ment?

It will be seen that, under the act of 1879, the carrying
on and conducting of certain enumerated gambling games
is made a distinct offense, as a misdemeanor. The new
act, it is true, deals with the subject of conducting and
carrying on gambling games. It enumerates the same
games that were named in the former act, to conduct
which was a misdemeanor, and provides that the act of con-
ducting and carrying them on shall be a felony, and pun-
ishable by imprisonment in the penitentiary when con-
ducted "where persons resort for the purpose of playing."
While the later act does in effect deal with the same sub-
ject as the former, yet it is complete and independent in
itself. It in no way refers to any former law, and such
reference is unnecessary in order to understand its full
meaning. It clearly designates certain acts as felonies,
and provides for their punishment. No further search
is required to find the law on the particular subject of
which the act treats. Being complete in itself, and in no
way dependent upon any other statute to give it meaning
or force, it stands alone as the law upon the particular
subject of which it treats. As such, being the latest law
on the subject, it repeals by implication all former statu-
tory provisions in conflict with it. That a statute may
in its effect modify or be in conflict with a former one
because it deals with the same subject-matter does not
necessarily make it an amending statute, within the mean-
ing of the constitutional provision invoked here. That
provision was evidently intended to prevent the evil of
seeking to amend a former law in such a manner that the
entire law upon the subject treated by the amendment
cannot be known without reference to the former law.

It was therefore wisely provided that in the case of such an amendment the former law as amended shall be fully set out, in order that the full force and significance of the amendment may be at once seen and understood, without reference to the former act.    But when an act is independent and complete in itself, though it has the effect to modify a former law, this constitutional provision, or a similar one, is held in many states not to apply, and such statutes are held not to be within the mischief intended to be remedied.    *State v. Cain,* 8 W. Va. 720; *People ex rel. Drake v. Mahaney,* 13 Mich. 481; *State ex rel. Maguire v. Draper,* 47 Mo. 29; *Evernham v. Hulit,* 45 N. J. Law, 53; *Clark v. Finley,* 93 Tex. 171 (54 S. W. 343); *Home Ins. Co. v. Taxing District,* 4 Lea, 644; *Anderson v. Commonwealth,* 18 .Grat. 295; *Davis v. State,* 7 Md. 151 (61 Am. Dec. 331); *Warren v. Crosby,* 24 Ore. 558 (34 Pac. 661); *Denver Circle Ry. Co. v. Nestor,* 10 Colo. 403 (15 Pac. 714); *State v. Gerhardt,* 145 Ind. 439 (44 N. E. 469, 33 L. R. A. 313); *State ex rel. Bragg v. Rogers,* 107 Ala. 444 (19 South, 909, 32 L. R. A. 520); *Little Rock v. Quindley,* 61 Ark. 622 (33 S. W. 1057; *Hellman v. Shoulters,* 114 Cal. 136 (44 Pac. 915); *State ex rel. Turner v. Hocker,* 36 Fla. 358 (18 South, 767); *Lehman v. McBride,* 15 Ohio St. 573; *People ex rel. Klokke v. Wright,* 70 Ill. 388.    Many of the above decisions declare that this constitutional provision does not abolish the long established rule of repeal by implication, when the new act is complete in itself, and does not depend upon former legislation to make it clear and intelligible. This court has held that a statute may be repealed by implication in this state.    *State ex rel. Whatcom County v. Purdy,* 14 Wash. 343 (44 Pac. 857).    Many of the decisions cite and quote from the opinion of Mr. Justice

COOLEY in *People v. Mahaney, supra.* The effect of the rule contended for by the petitioner here is so comprehensively stated by that eminent jurist that we quote at length from that opinion as follows:

"If, whenever a new statute is passed, it is necessary that all prior statutes, modified by it by implication should be re-enacted and published at length as modified, then a large portion of the whole code of laws of the state would require to be republished at every session, and parts of it several times over, until, from mere immensity of material, it would be impossible to tell what the law was. If, because an act establishing a police government modifies the powers and duties of sheriffs, constables, water and sewer commissioners, marshals, mayors and justices, and imposes new duties upon the executive and the citizen, it has thereby become necessary to re-enact and republish the various laws relating to them all as now modified, we shall find, before the act is completed, that it not only embraces a large portion of the general laws of the state, but also that it has become obnoxious to the other provisions referred to, because embracing a large number of objects, only one of which can be covered by its title.

"This constitutional provision must receive a reasonable construction, with a view to give it effect. The mischief designed to be remedied was the enactment of amendatory statutes in terms so blind that legislators themselves were sometimes deceived in regard to their effect, and the public, from the difficulty in making the necessary examination and comparison, failed to become apprised of the changes made in the laws. An amendatory act which purported only to insert certain words, or to substitute one phrase for another in an act or section which was only referred to but not republished, was well calculated to mislead the careless as to its effect, and was, perhaps, sometimes drawn in that form for that express purpose. Endless confusion was thus introduced into the law, and the constitution wisely prohibited such legislation. But an act complete in itself is not within the mischief de-

signed to be remedied by this provision, and cannot be held to be prohibited by it without violating its plain intent."

The petitioner insists that there are two lines of decisions upon this constitutional provision, one holding that it applies only to the form of the new law and that it does not apply to an act which in terms does not purport to be amendatory to a former one, while the other holds to the rule that it applies to substance as well as to form, and reaches an act that in effect is amendatory, although it may be independent in form, and contains no words showing an intention to amend. It is true, such a distinction appears to be made by some of the decisions. *State v. Guinney,* 55 Kan. 532 (40 Pac. 926), is cited in support of the rule that substance, and not form, must be observed in the application of this constitutional principle. The decision, in effect, seems to so hold, but at the same time the court says that "the constitutional clause in question was not intended to abolish the doctrine of repeals by implication." As being to the same effect, petitioner cites *Sovereign v. State,* 7 Neb. 409, and *State v. Beddo,* 22 Utah, 432 (63 Pac. 96). Other Nebraska and Utah cases are also cited, and the reasoning of the *United States v. Claflin,* 97 U. S. 546, is urged as supporting the rule. Whatever may be said of these decisions, we think the undoubted weight of authority in the different states supports the rule that, when a statute is so constructed that it requires no reference to another to determine its meaning and scope, the constitutional rule invoked does not apply.

The petitioner, however, insists that this court is committed to the doctrine that in all cases when a new act, in effect, amends another, the constitutional provision must apply. *Copland v. Pirie,* 26 Wash 481 (67 Pac.

227, 90 Am. St. Rep. 769), is cited in support of this contention. In that case the court was considering an act relating to exemptions of personal property, passed by the legislature of 1897. Session Laws 1897, p. 93. Section 1 of the act provided that,

"There shall be exempt from execution and attachment to every householder in the state of Washington personal property to the amount and value of one thousand dollars ($1,000) in addition to the property exempt under section 486 of volume 2 of Hill's Statutes and Codes of the State of Washington."

A glance at the above language shows that an exemption of $1,000 to every house holder was intended, but it shows equally as conclusively that other exemptions were also intended; and it is utterly impossible to tell what the other exemptions are, without reference to a former statute, which statute is specifically referred to in the new act as containing the necessary additional information. To determine what exemptions could be claimed by any householder required an examination of both statutes. It is true, the new act did not in express words say that it was intended to be amendatory to the former, but it did expressly refer to the former in such a manner as to show that it could not stand alone and be intelligently applied without being read in connection with the former. It was in all respects as amendatory to the former law and as dependent upon it as if it had said it was an act to amend the former. It seems to us now, as it did then, that such a statute comes directly within the evil sought to be prevented by the constitutional provision. Counsel for the petitioner earnestly urge that *Copland v. Pirie, supra,* is decisive of this case in the petitioner's behalf, but we as earnestly believe that it is by no means in principle like the case now before us. We

have already seen that the statute now under examination is entirely independent. It refers to no other law, and no further search is required to learn what is the entire law upon the exact subject of which it treats. As the latest legislative expression, it repeals by implication any former provisions in conflict with it.

We conclude that it is not such an act as comes within the constitutional rule urged here. The petitioner is therefore remanded to the custody of the sheriff of Spokane county for the purpose of carrying into effect the judgment of the superior court hereinbefore mentioned.

FULLERTON, C. J., and ANDERS, DUNBAR and MOUNT, JJ., concur.