[No. 8848.   Department One.   June 16, 1910.]

SPOKANE GRAIN & FUEL COMPANY et al., Appellants, v. · MRS. E. V. LYTTAKER et al., Respondents.[1]

STATUTES—ENACTMENT—AMENDMENTS — CONSTITUTIONAL RESTRICTIONS—MECHANICS' LIENS. Constitution, art. 2, § 37, providing that no act shall be revised or amended by mere reference to its title, but the act shall be set forth in full as amended, does not apply to an act complete and perfect in itself, although it amends by implication or is a substitute for a section in a former law on the same subject; and hence is not violated by the act of 1909, entitled an act relating to materialmen's liens and the enforcement thereof (Rem. & Bal. Code, § 1133), providing for the service upon the owner of duplicate statements of all materials furnished for the construction of buildings, etc.

STATUTES—TITLE AND SUBJECTS—VETO OF PART—REPEAL DEPENDENT UPON AFFIRMATIVE PART. The governor's powers in the exercise of the veto being limited by the constitutional restrictions upon legislative powers, he cannot veto all the affirmative legislation in an act and approve a section repealing all inconsistent laws, where the repeal was dependent upon the affirmative legislation, and was not included in the title of the act except as connected with the vetoed affirmative sections.

Appeal from a judgment of the superior court for King county, Gilliam, J., entered April 20, 1910, upon sustaining a demurrer to the complaint, dismissing an action to foreclose materialmen's liens, after a hearing before the court. Affirmed.

[1]Reported in 109 Pac. 316.

*Cassius E. Gates* and *Martin & Todd*, for appellants.

*Herchmer Johnston*, for respondents.

RUDKIN, C. J.—This was an action to foreclose material-men's liens. A demurrer to the complaint was sustained in the court below, and the plaintiffs elected to stand on their pleading and refused to plead further. A judgment of dismissal was thereupon entered, from which this appeal is prosecuted.

The demurrer was sustained for the reason that the complaint failed to allege that, at the time of the delivery of the materials, the lien claimants delivered or mailed to the owner or reputed owner of the property, upon, or about which the materials were to be used, a duplicate statement of all such materials, as required by section 1 of the act of March 4, 1909, Laws of 1909, p. 71 (Rem. & Bal. Code, § 1133). The act in question is entitled, "An act relating to material-men's liens, and the enforcement thereof," and the body of the act reads as follows:

"Section 1. Every person furnishing material or supplies to be used in the construction, alteration or repair of any mining claim, building, wharf, steamer, vessel, boat, bridge, ditch, dyke, flume, tunnel, well, fence, machinery, railroad, street-railway, wagon road, aqueduct to create hydraulic power, or any other structure or mining claim or stone quarry, shall, at the time such material or supplies are delivered to any person or contractor, deliver or mail to the owner, or reputed owner, of the property, on, upon or about which said materials or supplies are to be used, a duplicate statement of all such materials or supplies delivered to any contractor or person to whom any such materials or supplies have been sold or delivered, and no materialmen's lien shall be filed or enforced unless the provisions of this act have been complied with."

The appellants concede that the demurrer was properly sustained, if this act is constitutional and unrepealed, but they contend, first, that it violates section 37 of article 2 of the state constitution, which declares that, "No act shall ever

be revised or amended by mere reference to its title, but the act revised or the section amended shall be set forth at full length;" and, second, that it was repealed by the later act of August 28, 1909, Laws of Special Session, 1909, p. 71. We will first consider the constitutionality of the act, for, if invalid, the question of its repeal becomes immaterial. The mischief against which the above constitutional provision is directed was thus defined by Judge Cooley in *People v. Mahaney*, 13 Mich. 481:

"This constitutional provision must receive a reasonable construction, with a view to give it effect. The mischief designed to be remedied was the enactment of amendatory statutes in terms so blind that legislators themselves were sometimes deceived in regard to their effect, and the public, from the difficulty in making the necessary examination and comparison, failed to become apprised of the changes made in the laws. An amendatory act which purported only to insert certain words, or to substitute one phrase for another in an act or section which was only referred to but not republished, was well calculated to mislead the careless as to its effect, and was, perhaps, sometimes drawn in that form for that express purpose. Endless confusion was thus introduced into the law, and the constitution wisely prohibited such legislation. But an act complete in itself is not within the mischief designed to be remedied by this provision, and cannot be held to be prohibited by it without violating its plain intent."

See, also, *Warren v. Crosby*, 24 Ore. 558, 34 Pac. 661; *Ex parte Pollard*, 40 Ala. 77; *Lockhart v. City of Troy*, 48 Ala. 579; *Gandy v. State*, 86 Ala. 20, 5 South. 420; *State ex rel. Bragg v. Rogers*, 107 Ala. 444, 19 South. 909, 32 L. R. A. 520; *Snyder v. Compton*, 87 Tex. 374, 28 S. W. 1061; *Clark v. Finley*, 93 Tex. 171, 54 S. W. 344; *State ex. rel Farmers' Mut. Ins. Co. v. Moore*, 48 Neb. 870, 67 N. W. 876; *St. Louis etc. R. Co. v. Paul*, 64 Ark. 83, 40 S. W. 705, 62 Am. St. 154, 37 L. R. A. 504; *Evernham v. Hulit*, 45 N. J. L. 53; *Denver Circle R. Co. v. Nestor*, 10 Colo. 403, 15 Pac. 714; *Baum v. Raphael*, 57 Cal. 361; *Shields v. Bennett*, 8

W. Va. 74; *King v. Pony Gold Min. Co.*, 24 Mont. 470, 62 Pac. 783; *Parker-Washington Co. v. Kansas City*, 73 Kan. 722, 85 Pac. 781; *State v. Gerhardt*, 145 Ind. 439, 44 N. E. 469, 33 L. R. A. 313; *In re Dietrick*, 32 Wash. 471, 73 Pac. 506; *Northern Pac. R. Co. v. Pierce County*, 51 Wash. 12, 97 Pac. 1099, 23 L. R. A. (N. S.) 286; Cooley, Constitutional Limitations, p. 180 *et seq.*

In *Warren v. Crosby, supra*, the court said:

"The question, therefore, to be determined is whether the general act comes within the scope of the constitutional provision invoked. The language of the provision is both prohibitory and mandatory. By its terms it inhibits the revision or amendment of any act by mere reference to its title, and requires that the act revised or section amended shall be inserted at length. It does not purport to limit or restrict the power of the legislature in the enactment of laws. It relates only to the mode or form in which the legislative power shall be exercised. Its prohibition is against legislation effected by modes not in conformity with its requirements. The evil it sought to remedy is the mode in which the legislative power was sometimes exercised in the enactment of revisory or amendatory laws. This evil, as is well known, was the practice of amending or revising laws by additions or other alterations, which, without the presence of the original law, were usually unintelligible. Acts were passed, amending an existing statute by substituting one phrase for another, or by inserting a sentence, or by repealing a sentence, or a part of a sentence, in some portion or section thereof, which, as they stood, often conveyed no meaning, and, without examination and comparison with the original statute, failed to give notice of the changes effected. By such means an opportunity was afforded for incautious and fraudulent legislation, and endless confusion was introduced into the law. Legislators were often deceived, and the public imposed on by such modes of legislation. To prevent these consequences, and to secure a fair and intelligent exercise of the lawmaking power, was the object of the constitutional provision in question. This object it accomplished by imposing a limitation, not on the power of the legislature to make laws, but upon the mode in which that power should be exercised in the enactment of amendatory or revisory laws.

If the act is in itself complete and perfect, and is not amendatory and revisory in its character, it is not interdicted by this provision, although it amends by implication other legislation upon the same subject. Such an act, although it may operate to change or modify prior acts, is not within the mischief designed to be remedied by said section 22."

In *Ex parte Pollard, supra,* the court said:

"It was never intended by the constitution that every law which would affect some previous statute of variant provisions on the same subject should set out the statute or statutes so affected at full length. If this were so, it would be impossible to legislate. The constitutional provision reaches those cases where the act is strictly amendatory or revisory in its character. Its prohibition is directed against the practice of amending or revising laws by additions or other alterations, which without the presence of the original are usually unintelligible. If a law is in itself complete and intelligible, and original in form, it does not fall within the meaning and spirit of the constitution."

In *State ex rel. Bragg v. Rogers, supra,* the court said:

"All the purposes of the present act could doubtless have been accomplished by an act strictly and in form amendatory—by setting out the existing statutes, amending and re-enacting them, but it is obvious the amendatory act would have been cumbersome, and not more intelligible than is the present act. Whether an amendatory act, or an original act should be employed, was matter of legislative judgment and discretion, which the courts cannot control."

In *Snyder v. Compton, supra,* the court said:

"It is not meant by this provision that every act which amends the statutory law shall set out at length the entire law as amended. Under such a rule legislation would in many instances be impracticable. This is especially the case in this state, where the existence of the common law is due to statutory enactment. The practice which it was the purpose of the provision in question to prohibit was that of amending a statute by referring to its title, and by providing that it should be amended by adding to or striking out certain words, or by omitting certain language, and inserting in lieu thereof certain other words. It was not intended to pro-

hibit the passage of a law which declared fully its provisions without direct reference to any other act, although its effect should be to enlarge or restrict the operation of some other statutes."

In *St. Louis etc. R. Co. v. Paul, supra,* the court said:

"Appellants deny that the legislature has the power to amend their charters, except by enacting and publishing at length so much thereof as is amended. This contention is based on a section of the constitution which provides that 'no law shall be revived, amended, or the provisions thereof extended or conferred by reference to its title only; but so much thereof as is revived, amended or extended or conferred, shall be enacted and published at length.' But it is not correct. It is well settled in this and other states, where such constitutional limitations are in force, that a statute repeals, or operates as an amendment of, a prior law on the same subject, to the extent that they are in conflict, although the latter is not mentioned in the former."

In *King v. Pony Gold Min. Co., supra,* the court said:

"The act of 1893 does not purport to be an amendment to or a revision of section 540, *supra;* it is an additional and independent piece of legislation, which impliedly amended, and hence repealed, so much of section 540 as is in conflict with it, leaving section 540 otherwise operative."

In *Parker-Washington Co. v. Kansas City, supra,* the court said:

"It is argued that the act of 1905 amends various specific sections of the statute relating to cities of the first class, the language of which is closely followed in the corresponding sections of the new act, only such alterations being made as are necessary to accomplish the object already indicated— a change in the method of paying for public improvements in cities having a population of over 50,000; that the new act contains no reference to the old one, does not accomplish its repeal, and is therefore within the letter and spirit of the prohibition quoted. It is needless at this time to go into a discussion of the purpose and effect of the provision of the constitution referred to. That it has no application to amendments by implication is well settled. . . . The act

of 1905 in a sense amends various sections of the earlier act, but it does so by implication; it does not cover their entire subject-matter and hence does not supersede them, but merely restricts the field of their operation; it is a complete and in a sense an independent enactment, which requires no reference to any other statute to make its meaning clear. The objection made to it in this respect is therefore not well taken."

It seems to us the foregoing authorities demonstrate that the act in question is not violative of the constitutional provision under consideration. Nearly every legislative act of a general nature changes or modifies some existing statute, either directly or by implication, and as said by the court in *Ex parte Pollard, supra,* "Whether an amendatory or an original act should be employed is a matter of legislative judgment and discretion which the courts cannot control." The purpose of the constitutional provision was to protect the members of the legislature and the public against fraud and deception; not to trammel or hamper the legislature in the enactment of laws. If the act in question were entitled an act to amend the lien laws of the state, by proper reference, its validity could not be called in question, yet, what additional information would such a title or such an act bring home to either the legislature or the public. True, such an amendment would direct attention to the existing laws on the subject, but such was not the object or purpose of the framers of the constitution. So long as a legislative act is complete in itself, and has a sufficient title, it satisfies the requirements of the constitution, whether it contains much or little. The legislature may embody all legislation relating to a given subject in a single act, or it may cover the subject by a succession of acts. This is entirely a matter of legislative discretion over which we can assume no control.

In *State v. Gerhardt, supra,* the supreme court of Indiana collated a long list of statutes of that state which would be violative of the constitution, if construed according to the appellants' contention here, and no doubt an equally long

list might be selected from our own session laws. Many acts of a general nature relating to municipal corporations and kindred subjects change and modify existing laws and charter provisions by implication, but such amendments have never been deemed violative of the constitution. *People v. Mahaney* and *Warren v. Crosby, supra.*

The appellants rely largely on the case of *Copland v. Pirie,* 26 Wash. 481, 67 Pac. 227, 90 Am. St. 769, and it must be conceded that their contention finds support in that decision. It was there held that the act of 1897 (Laws 1897, p. 93, relating to exemptions of personal property was amendatory of section 486 of Hill's Statutes and Codes (Rem. & Bal. Code, § 563), and was therefore void, because not enacted according to the requirements of the constitution. If the act of 1897 was strictly amendatory in its character, the conclusion of the court was unavoidable, but the legislature in its wisdom did not see fit to enact it in that form, and it may well be doubted whether the court did not go too far in limiting and restricting the legislature as to the mode it might pursue in the enactment of laws. *Lockhart v. City of Troy, supra.*

In the course of its opinion in the case cited this court said:

"In construing similar constitutional provisions the courts seem generally to have held that this requirement does not apply to supplemental acts not in any way modifying or altering the original act, nor to those merely adding sections to an existing act, nor to acts complete in themselves, not purporting to be amendatory, but which by implication amends other legislation on the same subject."

The rule there stated is no doubt the correct one, but was not the act of 1897 a supplementary act within the meaning of that rule? It in no wise altered or amended existing laws, but simply increased the existing exemptions, by adding a new exemption of a different kind. The decision in *Copland v. Pirie* was controlled largely by the decision of the United States district court for this district, in *In re Beulow,* 98

Fed. 86, construing the same statute. That court proceeded upon the theory that "The new act is not complete, but refers to a prior statute, which is changed, but not repealed by the new act, so that the full declaration of the legislative will on the subject can only be ascertained by reading both statutes, the very obscurity and the tendency to confusion will be found which constitutes the vice prohibited by this section of the constitution." But how often must we look to two or more acts to ascertain the full declaration of the legislative will. No one will for a moment doubt the power of the legislature to exempt homesteads by one act, household goods by another, farming implements by a third, and so on; yet the full declaration of the legislative will on the subject of exemptions could only be gathered by referring to these several acts. Followed to its logical conclusion, this argument would compel the legislature to embody in a single enactment, or in amendments thereto, all legislation relating to a single subject. Such was not the object or purpose of the provision in question. So long as a legislative act is complete in itself and does not tend to mislead or deceive, it is not violative of the constitution.

Turning now to the act before us, we find it complete in every detail. No person of ordinary intelligence can mistake its meaning. We know full well what the legislature intended, without referring to any other act or statute. Of course it does not embody the entire lien law of the state, but the constitution does not require that it should. We are therefore of opinion that the act is valid, and that the demurrer was properly sustained, unless the act was repealed by subsequent legislation, a question we will next consider.

At the special session of 1909 an act was passed similar in many respects to the act of March 4, 1909 (Rem. & Bal. Code, § 1133). In general terms the first four sections of the latter act required the lien claimant, at or before the delivery of supplies or materials, to mail or deliver to the owner, or to certain designated persons for him, a written

notice, stating that materials and supplies have been delivered or ordered for use on his property, and that a lien may be claimed therefor.  The 5th section of the act repeals the act of March 4, 1909 *supra*, and the 6th section declares an emergency.  The governor vetoed the first four sections of the act and approved the last two, so that the act as approved by the governor reads as follows:

"An act relating to materialmen's liens and the enforcement thereof, and declaring an emergency.

"Be it enacted by the legislature of the state of Washington:

"Sec. 5.  Chapter 45, found on pages 71 and 72 of Laws 1909, be and the same is hereby repealed.

"Sec. 6.  An emergency exists, and this act shall take effect immediately."  Laws of Extraordinary Session, 1909, page 71.

In approving and disapproving laws, in the exercise of his constitutional prerogative, the executive is a component part of the legislature, and his powers are limited and defined by the constitution.  In the exercise of the veto power the executive can have no greater power than the executive and the legislature combined, yet if the legislature had enacted the law in question, in the form in which it left the executive office, there could be no question as to its invalidity.  It is now a repealing law pure and simple, and its only object is not expressed in its title, as required by section 19 of article 2 of the state constitution.

"We do not wish to be understood as saying that it is necessary in all cases that the repeal of a given statute should be expressed *in terms* in the title.  If the subject of a statute is to repeal another statute, then manifestly that subject must be fairly expressed in the title.  If, however, the repealing act is upon the same subject as the act repealed, the repeal is properly connected with the subject-matter and the repealing section is valid notwithstanding the title is silent on that subject."  *Howlett v. Cheetham*, 17 Wash. 626, 50 Pac. 522.

As originally passed, the provision repealing inconsistent laws was connected with the subject-matter of the act and properly within the title, but all affirmative legislation was wiped out by the veto, and the repealing clause was left standing alone. The repealing clause was a mere incident to the affirmative legislation contained in the act, and when the latter fell under the veto the former fell with it. In other words, when the executive approved the repealing section he approved something that his veto had already destroyed. The legislature attempted to substitute one act for another and the executive had a right to place his veto on the substitution, but he could not defeat the one act by his veto, and the other by approving the repealing clause.

We are therefore of opinion that the attempted repeal of the act of March 4, 1909, is a nullity, and the judgment of the court below is accordingly affirmed.

Gose, Fullerton, Chadwick, and Morris, JJ., concur.