[No. 16596.    Department Two.    July 28, 1921.]

THE STATE OF WASHINGTON, *on the Relation of School District No. 102, Spokane County, Plaintiff,* v. C. W. CLAUSEN, *as State Auditor, Respondent.*[1]

SCHOOLS AND SCHOOL DISTRICTS (30)—LIMITATION OF INDEBTEDNESS—COMPUTATION—STATUTES—REPEAL.    Laws 1917, p. 587, § 1, (ch. 143) limiting the indebtedness of all taxing districts on the basis of "1½ per centum of the last assessed valuation of the taxable property" in the district (thereby impliedly amending Laws 1909, ch. 97, Rem. Code, § 4607, which permitted school districts to incur indebtedness to 5 per cent of the taxable property in such districts) was not itself superseded by a later amendment of Rem. Code, § 4607, by Laws 1919, ch. 90, § 12, which, following the method of amending statutes prescribed by the constitution, set out the section as amended, and thus restated the portions which conflicted with the 1917 act.

STATUTES (47)—IMPLIED REPEAL—BY AMENDATORY ACT—AMENDMENT—EFFECT ON INTERVENING ACT.    Where an act has been in part impliedly repealed and superseded by a conflicting act on the same subject, the subsequent amendment of the earlier act in the constitutional method of amending laws, without mention of the intervening act, does not amend or repeal by implication such intervening act so as to restore the conflicting portions of the first act.

Application filed in the supreme court June 8, 1921, for a writ of mandate to compel the state auditor to issue a warrant for bonds of a school district.   Denied.

*Wm. C. Meyer* and *Clarence A. Orndorff,* for relator.

*The Attorney General* and *M. H. Wight,* for respondent.

MITCHELL, J.—The relator, School District No. 102 of Spokane county, seeks a writ of mandate to compel the respondent, C. W. Clausen, as state auditor, to issue a warrant in the sum of $45,000 for bonds of the school district it is alleged the state board of finance is

[1]Reported in 199 Pac. 752.

obligated to take.   The controversy arises because of
diverse views as to the legality of the bonds with refer-
ence to the statutory limit of indebtedness.   The con-
tention of the relator is that the limit of indebtedness of
a school district is five per cent of the taxable property
in the district, while the respondent contends that it is
five per cent of the last assessed valuation of the tax-
able property in the district.   If the relator's conten-
tion is correct, the writ must issue; otherwise, it must
be denied.

.  Section 1, p. 324, ch. 97, Laws of 1909 (Rem. & Bal.
Code, § 4607; Rem. Code, § 4607), empowered the board
of directors of any school district to borrow money and
issue negotiable coupon bonds therefor to any amount
not to exceed five per cent  of the taxable property in
such district, as shown by the last assessment roll for
county and state purposes previous to the incurring of
such indebtedness, when authorized by a vote of the dis-
trict so to do.   Similar language was considered in the
case of *Hansen v. Hoquiam*, 95 Wash. 132, 163 Pac. 391,
wherein it was held that the constitutional limit of in-
debtedness of five per cent on the total value of the tax-
able property, to be ascertained by the last assessment
for state and county purposes previous to the incurring
of such indebtedness, does not mean five per cent of the
assessed valuation, where the assessing officers assess
property at fifty per cent of its value, but means five
per cent of its actual value, or that per cent of twice its
assessed value.   Promptly, after that decision, the leg-
islature enacted a law (Laws of 1917, p. 587, ch. 143),
which provides as follows:

"Section 1.  No taxing district shall for any purpose
become indebted in any manner to an amount exceeding
one and one-half per centum of the last assessed valua-
tion of the taxable property in such taxing district,

without the assent of three-fifths of the voters therein voting at an election to be held for that purpose, nor in cases requiring such assent shall the total indebtedness at any time exceed five per centum of the last assessed valuation of the taxable property in such taxing district: . . ."

Section 4 of the act (Laws of 1917, p. 589) defines the term "taxing district" to mean and embrace "all counties, cities, towns, townships, port districts, school districts, metropolitan park districts or other municipal corporations which now, or may hereafter exist."

Because of the well established rule, for which there is an abundance of authority, we think it must be held that the statute of 1917 superseded that portion of § 1, p. 324, ch. 97, Laws of 1909, with reference to the basis for computing the limit of indebtedness, because of the positive conflict between the two statutes; so that, after the effective date of the act of 1917, the limit of indebtedness of a school district was five per cent of the last assessed valuation of the taxable property in such district, rather than five per cent of the taxable property therein. We understand that counsel on both sides agree that such was the effect of the act of 1917. Thereafter, the legislature of 1919 (ch. 90), without directly or otherwise referring to the act of 1917, and following the form prescribed in the constitution, amended § 1, p. 324, ch. 97, Laws of 1909—Rem. & Bal. Code, § 4607. Chapter 90, p. 216, § 12, of the act of 1919, commences: "That § 4607 of Remington & Ballinger's Annotated Codes and Statutes of Washington be amended to read as follows:" Then follows therein, so far as it is material in the present case, a repetition of the words of the former statute to which the amendment is addressed concerning the power of the board of directors of any school district to borrow money and issue negotiable

coupon bonds therefor to any amount not to exceed five per cent of the taxable property of such district, as shown by the last assessment roll for county and state purposes previous to the incurring of such indebtedness, when authorized by a vote of the district so to do, and there is added in the amendment, *inter alia,* a proviso, "that from and after July 1, 1919, all bonds issued by any school district shall be issued in serial form". And it is argued for the relator that the amendment necessarily repeals and supersedes that portion of the act of 1917 relating to school districts, so that the limit of indebtedness of such districts is now determined upon the basis of the taxable property in the district rather than upon the assessed valuation thereof—that the amendment in the fullness of its text and terms is the law, so far as school districts are concerned, as if the statute of 1917 had never been enacted.

There is a conflict of authority as to whether a section which has been repealed can be amended. 25 R. C. L., p. 905, § 157; 36 Cyc. 1055; Lewis' Sutherland Statutory Construction (2d. ed.), § 233. The authorities show, however, that "the question usually arises where a section of an act is amended 'to read as follows', and is then again amended in the same manner and by the same description, ignoring the first amendment". 25 R. C. L., p. 905, § 157.

We need not, nor do we, take sides in this conflict of opinion, for, in the last analysis, the question here is not if such an amendment can be made, but what is the effect of such an amendment. In considering this precise question it will be noticed: (1) That the original law, 1909, consisted of two important particulars, among others, viz: the issuance of bonds not exceeding five per cent of the taxable property in the district when authorized by a vote of the district, and that the bonds

should bear interest at not to exceed six per cent per annum, payable annually or semi-annually, the bonds to mature as designated in the bonds not to exceed twenty years; (2) that the act of 1917, by necessary implication, repealed that part of the 1909 act by which the basis of valuation was changed from the value of the property to the assessed valuation of the property; and (3) that the amendatory act of 1919 repeated the provisions of the act of 1909 relating to the issuance of bonds not exceeding five per cent of the taxable property of the district when authorized by a vote of the district; it repeated the provision with reference to the rate and payment of interest, changed the wording of the old law as to the maturity of bonds, providing a greater length of time therefor, and in districts of the first class, where bonds were issued for certain specified purposes, the bonds should be made payable in semiannual installments beginning the third year over any period not exceeding forty years; and added by further proviso that all bonds issued by any school district shall be issued in serial form. These were new and important changes and extensions in the amendatory act over the terms of the original act, upon particulars altogether foreign to the terms and purpose of the intervening act of 1917. The 1919 act was not a new and independent one, strictly speaking, but it took the form of an amendatory act.

Section 37, art. 2, of the constitution, provides: "No act shall ever be revised or amended by mere reference to its title, but the act revised or the section amended shall be set forth at full length". The reasons for this limitation upon the mode or form in which the legislative power to amend a law shall be exercised are elaborately expressed in the case of *Spokane Grain & Fuel Co. v. Lyttaker*, 59 Wash. 76, 109 Pac. 316, and authorities

therein cited, and need not be repeated here. In con-
struing the amendment of 1919, it is manifest that the
use or repetition therein of language found in the
original act, including that relating to the basis of the
valuation of property of the district upon which the five
per cent limit of indebtedness should be computed,
which in no way interfered with the revisions and ex-
tensions the legislature desired and intended to ac-
complish by the amendment, was but a vehicle or means
mandatorily required by the constitution. By repeat-
ing the language of the old law, it cannot be held that
the legislature thereby repealed by implication the act
of 1917 which necessarily repealed that portion of the
old law fixing the basis of valuation of the property of
a school district, and recreated the old law upon that
particular feature (thus discriminating in favor of
school districts over all other taxing districts of the
state), since, as already observed, the legislature in
1919 was then engaged only in the process of amend-
ment—that is, declaring for the first time certain things
to be the law, impossible of achievement by amendment
of a former law, under the inhibition of the constitution,
except in the manner actually employed. To ascertain
the effect of the amendment, it, in the light of the man-
ner the constitution prescribes an amendment shall be
effected, the old law amended, and the act of 1917 which
changed the old law in one particular—the one particu-
lar here involved—must all be considered together.

*McLaughlin v. Newark,* 57 N. J. L. 298, presented a
situation wherein the legislature of New Jersey
amended an act concerning wards and district lines in
the cities of the state. Intervening the original and
amendatory acts, the legislature passed an independent
act providing for the formation and establishment of
wards in cities of the first class; and in presenting the

case to the court it was contended by counsel that the original act and the intermediate one were inconsistent and that the amendatory act evinced a purpose to repeal whatever laws were at that date inconsistent with the original act. The court, after stating that, under the constitution, an amended section must be recited at length in the amended act, decided the case as follows: "By observing the constitutional form of amending a section of a statute the legislature does not express an intention then to enact the whole section as amended, but only an intention then to enact the change which is indicated. Any other rule of construction would surely introduce unexpected results and work great inconvenience." It was held the intermediate act was unimpaired.

In the case of *Gordon v. People,* 44 Mich. 485, 7 N. W. 69, there was considered the effect of an amendatory act upon an intervening act not referred to in the amendatory act. In the opinion written by Judge Campbell, concurred in by the other judges including Judge Cooley, it was said:

"No one would claim for a moment that if § 7569 had been amended as was formerly the custom—not by republishing it as changed, but only by showing for what part the new clause was substituted—any effect would be produced on the remainder of the section. The constitutional provision requiring amendments to be made by setting out the whole section as amended was not intended to make any different rule as to the effect of such amendments. So far as the section is changed it must receive a new operation, but so far as it is not changed it would be dangerous to hold that the merely nominal re-enactment should have the effect of disturbing the whole body of statutes *in pari materia* which had been passed since its first enactment. There must be something in the nature of the new legislation to show such an intent with reasonable clearness before

an implied repeal can be recognized.   Repeals by implication should not be established without satisfactory reason to believe such was the legislative will.''

It appears in *Spokane Grain & Fuel Co. v. Lyttaker,* *supra,* by a quotation from *Warren v. Crosby,* 24 Ore. 558, 34 Pac. 661, that Oregon has a constitutional provision similar to ours.   The case of *Small v. Lutz,* 41 Ore. 570, 67 Pac. 421, discusses a situation similar to those above referred to in the states of New Jersey and Michigan and reaches the same conclusion, citing therein other authorities.

The conclusion is that the amendatory act did not restore the provision of the old act, and that the law of 1917 declaring that the limit of indebtedness that may be authorized by a vote of a taxing district, including a school district, is five per cent of the last assessed valuation of the taxable property in such district remains controlling and unrepealed.

Writ denied.

PARKER, C. J., TOLMAN, and MAIN, JJ., concur.