[No. 33023. Department Two. January 6, 1955.]

RUDOLPH NACCARATO, *Respondent,* v. WILLIAM A. SULLIVAN et al., *Appellants.*[1]

[1] Reported in 278 P. (2d) 641.

*The Attorney General* and *Ralph M. Davis, Assistant,* for appellants.

*Lynch & Lynch* and *Rudolph Naccarato,* for respondent.

SCHWELLENBACH, J.—The state employees' retirement system was established by chapter 274 of the Laws of 1947. It was a complete act consisting of fourty-four sections, created for the benefit of the employees of the state, and it established a board consisting of seven members who were to administer the act, and to collect, invest, and disburse funds to be used in its operation. Section 8, p. 1173, provided:

"(a) *Investment of Funds.* The members of the Retirement Board shall be the trustees of the several funds created by this act and the Retirement Board shall have full power to invest same in bonds or other obligations of the United States, the State of Washington or of any county, city, village, or school district of the state, or of any other legally constituted taxing subdivision within the state, or in revenue bonds secured by property within the State of Washington, or in mortgage bonds or notes insured by the Federal Housing Administrator, or debentures issued by such administrator or in bonds, notes, debentures, or other obligations in which both principal and interest are insured or guaranteed by the Federal government, or obligations of national mortgage associations created under the National Housing Act, or amendments thereto. All such bonds, or other obligations, shall be purchased at current market price and all such purchases shall be authorized by a resolution adopted by the Retirement Board. The Retirement Board may purchase out of the several funds hereinbefore created, appropriate contracts of life insurance or annuity from insurers duly authorized to do business in the State of Washington, if and when such purchase or purchases shall in the judgment of said Retirement Board be appropriate or necessary to carry out the purposes of this act."

The act, including § 8 thereof, was amended by chapter 240, Laws of 1949, p. 912, although the type of investments was not changed.

In 1953, the legislature enacted chapter 284, Laws of 1953, p. 766, "AN ACT relating to the state employees' retirement system; authorizing building of an office building in Seattle,

Washington; allowing the state to negotiate long-term leases for space therein; creating a fund; and declaring an emergency." It provided:

"Section 1. The members of the retirement board of the state employees' retirement system shall have full power to purchase and take title to real property and to build, own, manage and maintain thereon an office building in Seattle, Washington, and to invest in such real property and office building any of its funds in an aggregate amount not to exceed four million dollars. Space in this office building shall only be leased to the state and federal government or to any of their subdivisions, agencies or instrumentalities. The state of Washington, through its department of public institutions, shall have express authority to enter into leases for terms not to exceed thirty years, for space therein as designated by the director of department of public institutions, in behalf of and for the use and housing of all or any part of the department of health and any other state department or agency housed or using office space in the city of Seattle.

"Sec. 2. All rental payments or other revenue received from the operation of the office building shall be paid into a special fund outside the state treasury, known as the retirement board building fund, which fund shall not be a state fund, and from which shall be paid all expenses of management and operation and disbursements to the retirement system funds in the state treasury. None of the provisions of RCW 43.01.050 shall be applicable to such fund nor to any moneys so received or collected. The retirement board may make an initial loan not to exceed ten thousand dollars, from the retirement system expense fund to the retirement board building fund: *Provided,* That all such sums so loaned shall be repaid as soon as practicable from funds available in the retirement board building fund."

Plaintiff commenced an action in the superior court for Thurston county alleging, among other things, that out of the funds received from payroll deductions and contributions by public employees of the state of Washington and its political subdivisions, an employees' retirement fund had been built up in the approximate sum of $30,000,000, and seeking a declaration that chapter 284 was unconstitutional on nine different grounds. The trial court declared the act unconstitutional as being amendatory of § 8, chap-

ter 274, Laws of 1947, in violation of Article II, § 37 of the state constitution, which provides:

"No act shall ever be revised or amended by mere reference to its title, but the act revised or the section amended shall be set forth at full length."

The act was found constitutional on all other grounds urged by the plaintiff. Defendants appeal, but plaintiff does not cross-appeal, so the only question before the court is whether or not this act violates Art. II, § 37. We express no opinion as to the other grounds of unconstitutionality presented to the trial court, as they are not properly before us.

*In re Dietrick,* 32 Wash. 471, 73 Pac. 506, was a *habeas corpus* action in which Dietrick contended that he was restrained of his liberty for the violation of an unconstitutional statute. He had been convicted of conducting a gambling game and sentenced to one year's imprisonment. He contended that the only punishment which could be inflicted was a fine. The early statute on gambling made the crime a misdemeanor. Later an act was passed very similar to the first, except that the crime was made a felony. The prior act was not referred to, nor set forth in full. We held that § 37 of the state constitution did not apply to cases where a later act, designated as a complete law in itself, repealed by implication a former law on the same subject. We said:

"While the later act does in effect deal with the same subject as the former, yet it is complete and independent in itself. It in no way refers to any former law, and such reference is unnecessary in order to understand its full meaning. It clearly designates certain acts as felonies, and provides for their punishment. No further search is required to find the law on the particular subject of which the act treats. Being complete in itself, and in no way dependent upon any other statute to give it meaning or force, it stands alone as the law upon the particular subject of which it treats. As such, being the latest law on the subject, it repeals by implication all former statutory provisions in conflict with it. That a statute may in its effect modify or be in conflict with a former one because it deals with the same subject-matter does not necessarily make it an

amending statute, within the meaning of the constitutional provision invoked here. That provision was evidently intended to prevent the evil of seeking to amend a former law in such a manner that the entire law upon the subject treated by the amendment cannot be known without reference to the former law."

*Spokane Grain & Fuel Co. v. Lyttaker*, 59 Wash. 76, 109 Pac. 316, was an action brought to foreclose materialmen's liens. A demurrer to the complaint was sustained for the reason that there was no allegation that the claimants delivered a statement of materials furnished at the time of delivery as required by Rem. & Bal. Code, § 1133. Plaintiffs contended that the act violated Art. II, § 37, of the constitution. We held that the act was complete in itself and was not violative of the constitutional provision. We quoted with approval a number of decisions from other jurisdictions, among which were *Warren v. Crosby*, 24 Ore. 558, 34 Pac. 661:

"If the act is in itself complete and perfect, and is not amendatory and revisory in its character, it is not interdicted by this provision, although it amends by implication other legislation upon the same subject. Such an act, although it may operate to change or modify prior acts, is not within the mischief designed to be remedied by said section 22."

*State ex rel. Bragg v. Rogers*, 107 Ala. 444, 19 So. 909, 32 L. R. A. 520:

"All the purposes of the present act could doubtless have been accomplished by an act strictly and in form amendatory—by setting out the existing statutes, amending and re-enacting them, but it is obvious the amendatory act would have been cumbersome, and not more intelligible than is the present act. Whether an amendatory act, or an original act should be employed, was matter of legislative judgment and discretion, which the courts cannot control."

*St. Louis I. M. S. R. Co. v. Paul*, 64 Ark. 83, 40 S. W. 705, 62 Am. St. 154, 37 L. R. A. 504:

"It is well settled in this and other states, where such constitutional limitations are in force, that a statute repeals, or operates as an amendment of, a prior law on the

same subject, to the extent that they are in conflict, although the latter is not mentioned in the former."

*King v. Pony Gold Mining Co.,* 24 Mont. 470, 62 Pac. 783:

"The act of 1893 does not purport to be an amendment to or a revision of section 540, *supra;* it is an additional and independent piece of legislation, which impliedly amended, and hence repealed, so much of Section 540 as is in conflict with it, leaving Section 540 otherwise operative."

We then said:

"So long as a legislative act is complete in itself, and has a sufficient title, it satisfies the requirements of the constitution, whether it contains much or little. The legislature may embody all legislation relating to a given subject in a single act, or it may cover the subject by a succession of acts. This is entirely a matter of legislative discretion over which we can assume no control.

"Turning now to the act before us, we find it complete in every detail. No person of ordinary intelligence can mistake its meaning. We know full well what the legislature intended, without referring to any other act or statute. Of course it does not embody the entire lien law of the state, but the constitution does not require that it should."

In *State ex rel. Hunt v. Tausick,* 64 Wash. 69, 116 Pac. 651, we held that an act authorizing the adoption of a commission form of city government, and leaving in force all existing laws not inconsistent with the act, was not unconstitutional. We said:

"It cannot be any objection to this law that, in order to ascertain powers granted to cities organized under it, it becomes necessary to refer to existing laws relative to cities of the second class. The courts have repeatedly recognized the validity of reference statutes, a common and approved method of legislation in the absence of constitutional restrictions."

In *Holzman v. Spokane,* 91 Wash. 418, 157 Pac. 1086, the general revenue law permitted a private holder of a general tax certificate of delinquency to foreclose the same upon his paying accrued general taxes only and rendered such foreclosure a bar to local assessment liens. Later a local improvement act was passed, § 40 of which provided that the holder of a certificate of delinquency for general taxes

should pay all outstanding local assessments before foreclosure or else acquire title subject to such assessments. In holding the later act constitutional, we said:

"The local improvement law of 1911 containing the above quoted provisions in § 40 thereof, looking to the enforcement of local assessment liens and in effect making them of equal rank with general tax liens when the latter has been transferred by the county to private individuals, is a general law complete within itself upon the subject of local improvements, including local assessments and the liens thereof, and purports to cover the whole subject-matter of which it treats."

*Swanson v. School Dist. No. 15,* 109 Wash. 652, 187 Pac. 386, was an action for damages for injuries sustained by the plaintiff on a circular saw in the manual training department of the school. The 1917 legislature passed an act providing that no action should be maintained against any school district for any noncontractual acts or omissions of such district relating to any athletic apparatus, or manual training equipment, etc. Under a prior statute, school districts were liable in such cases. It was contended that the 1917 act was an amendment of the prior law and was in violation of Art. II, § 37 because no reference was made, either in the title or the body of the act, to the prior law. We held the act to be constitutional and, referring to *Spokane Grain & Fuel Co. v. Lyttaker, supra,* said:

"That act made no reference to the prior law upon the subject, but provided as an additional requirement to the validity of a lien the delivery or mailing to the owner of a duplicate statement. The effect of the law was to add to the prior law an additional requirement necessary to the validity of the lien. It was there held that the act was complete in itself and satisfied the requirements of the constitution that the legislature was not required to embody all legislation relating to a given subject in a single act, but that it may cover the subject by a succession of acts. There can be no substantial distinction between that case and the present. There the statute construed added requirements to a prior law in an act making no reference to such prior statute. Here the act, in effect, takes from the operation of the prior law the liability of school districts in certain particulars."

We held in *Roehl v. Public Utility Dist. No. 1,* 43 Wn. (2d) 214, 261 P. (2d) 92, that in order to constitute a reference statute, the section and chapter of the enactment referred to need. not be expressly stated in the reference statute. That case involved the constitutionality of a 1949 act which permitted public utility districts to jointly acquire electric utility properties. The original act authorized such acquisition only by each district individually. We held that the latter enactment was not amendatory of the earlier statute, but was supplemental thereto.

In *Swedish Hospital v. Department of Labor & Industries,* 26 Wn. (2d) 819, 176 P. (2d) 429, the legislature had passed an act to bring employees of charitable institutions within the workmen's compensation act. The plaintiff contended that the act was amendatory of the original workmen's compensation act, while the department contended that the .act was complete in itself. We stated the tests to be applied in determining whether an act is complete:

"They are: Can a person of ordinary intelligence mistake its meaning? Can we know what the legislature intended, without referring to any other act or statute?"

. We pointed out that the members of the joint board of the department, in promulgating rules to carry out the provisions of the act, clearly demonstrated that they were mistaken as to its meaning, and then concluded:

"It is clear that neither the department nor the members of this court can (adopting. the language of the *Lyttaker* opinion) 'know full well what the legislature intended, without referring to any other act or statute,' and we are strongly inclined to think that the trial judge has fairly well demonstrated that this cannot be .done even by reference to prior acts or statutes."

*Rourke v. Department of Labor & Industries,* 41 Wn. (2d) 310, 249 P. (2d) 236, involved consideration of a legislative act which provided that work performed by maintenance and service employees in stores, buildings, and establishments be declared extrahazardous within the meaning of the workmen's compensation law. We held the act to be

amendatory of the workmen's compensation act and in violation of Art. II, § 37. We said:

"This provision must receive a reasonable interpretation, and certain acts, designated as reference statutes, do not come within its restriction. But this act is not a reference statute. *Gruen v. State Tax Commission, supra,* pp. 24, 25, 26, and cases cited. It does not refer to and adopt by reference preexisting statutes and make them applicable to this legislation. It is not complete in itself in every detail. A person of ordinary intelligence can well mistake its meaning, and we cannot know what the legislature intended, without referring to another act or statute. See *Spokane Grain & Fuel Co. v. Lyttaker,* 59 Wash. 76, 78, 109 Pac. 316 (1910), and *Swedish Hospital v. Department of Labor & Industries, supra,* p. 828.

"This provision of the constitution is mandatory and must be obeyed, so that statutes, upon amendment, will express a complete statement of the law as amended. Otherwise, the difficulties in determining the statutory law will not only be multiplied but will be almost insurmountable."

■ This court has adopted the rule that Art. II, § 37, of the state constitution is not violated in the following instances: (1) complete acts which repeal prior acts or sections thereof on the same subject; (2) complete acts which adopt by reference provisions of prior acts; (3) complete acts which supplement prior acts or sections thereof without repealing them; (4) complete acts which incidentally or impliedly amend prior acts.

Let us examine chapter 284, Laws of 1953, and determine if we can, what it provides. It authorizes the construction of an office building in Seattle. No appropriation is made for its construction. However, the act authorizes the members of the retirement board to acquire property and build, own, manage, and maintain the building, and to invest in the project any of its funds in an amount not to exceed four million dollars. In other words, it is putting the members of the retirement board into the business of constructing, owning, and operating an office building. We are not concerned with the feasibility of such a project, but we are concerned with whether or not the act violates Art. II, § 37, of the constitution.

At the outset, in order to understand what the legislature was attempting to accomplish, we are compelled to refer to the employees' retirement act of 1947. We find that the members of the retirement board are made trustees of the funds coming into their hands for the benefit of the public employees who are members of the retirement system. We find that, as such trustees, they are limited in their investment of such funds to the purchase of bonds or other obligations of the United States, the state of Washington, or other governmental agencies. The act is not complete in itself in that we cannot understand its import without referring to the employees' retirement act.

Can it be said that the act under consideration is supplemental to the retirement act, rather than amendatory? When we consider that members of the retirement board are trustees of the funds coming into their hands and that they are limited in their investments to the same kind of investments ordinarily limited to trust funds, we feel that an act authorizing such a decided change in the character of investments as here proposed, is not supplemental to the retirement act. We must hold that it is amendatory thereto.

The legislature evidently felt that even additions to the same type of investments were not supplemental, but amendatory. Chapter 240, Laws of 1949, amended certain sections of the 1947 act, including § 8, covering investment of funds. During the 1953 session in which chapter 284 was enacted, the legislature enacted chapter 200, which added six new sections to the law covering the state employees' retirement system and amended nineteen sections. Among those amended was the section covering investment of funds. In enacting chapter 200, the 1953 legislature meticulously followed the constitutional provision dealing with the revision or amendment of prior acts or sections thereof.

Chapter 284, Laws of 1953, covered the construction of an office building and, as an incident thereto, a change in the investment of funds belonging to the state employees' retirement system. Both phases of the plan were so intermingled that we cannot know what the legislature intended without referring to the retirement act. It was not a com-

plete act in itself. The provision for the investment of funds in an office building constituted such an abrupt departure from the original plan of limiting such investments to public bonds, obligations, etc., that it was not supplementary of the original act. It was amendatory thereto. The amendatory act was not a reference statute, as such term has been defined by this court. The act was in clear violation of Art. II, § 37, of the state constitution.

The judgment is affirmed.

GRADY, C. J., HILL, DONWORTH, and WEAVER, JJ., concur.