[No. 48436-8. En Banc. October 28, 1982.]

WASHINGTON EDUCATION ASSOCIATION, ET AL, *Petitioners,*
v. THE STATE OF WASHINGTON, ET AL,
*Respondents.*

900

*Judith Lonnquist* (of *Durning, Webster & Lonnquist*) and *C. Kenneth Grosse* (of *Watson, Grosse & Feinstein*), for petitioners.

*Kenneth O. Eikenberry, Attorney General, Richard M. Montecucco, Senior Assistant,* and *Matthew J. Coco, Steven P. Recor,* and *Gary L. Ikeda, Assistants,* for respondents.

*Herbert H. Fuller,* amicus curiae for petitioners.

UTTER, J.—This is a direct action under RAP 16.2 before the Supreme Court challenging on a number of grounds the constitutionality of Substitute House Bill 782 (SHB 782). We hold it constitutional.

On December 2, 1981, the Legislature passed SHB 782 (see Appendix). The bill took effect immediately upon its final approval on December 21, 1981.

On January 21, 1982, the State Board for Community College Education passed a resolution declaring a state of financial emergency within the community college system.

The collective bargaining agreement in effect at Skagit Valley College contains comprehensive criteria and procedures governing dismissal of faculty members through a reduction in force (RIF) necessitated by financial emergency.

Skagit Valley College (SVC) followed its collective bargaining procedures up through and until January 21, 1982. At that point, SVC abandoned the collectively bargained procedures and adopted the procedures for a reduction in force set forth in SHB 782. By letter dated February 3, 1982, notices of reduction in force effective at the end of the 1981–82 academic year were sent to petitioners Mr. Ramon Pruiett, Ms. Carol Garzina, and Mr. David Follingstad, who are tenured faculty members of the college. Hearings with respect to these dismissals took place at the same time we heard arguments in this case.

Petitioners filed a Petition for Mandamus, Prohibition and Declaratory Judgment in this court on February 23, 1982, along with a Petition for Original Jurisdiction for Mandamus, Prohibition, Declaratory Relief and Stay of Proceeding. On March 11, 1982, the Supreme Court Commissioner entered an order allowing this matter to be maintained as an original action.

The fundamental dispute between petitioners and respondents concerns the nature of SHB 782. Petitioners claim the new law drastically changes rights and process under existing laws and contracts. Respondents perceive SHB 782 as supplemental to those laws, providing a uniform and specific procedure for the dismissals due to reductions in force it addresses.

I

Petitioners first claim SHB 782 violates article 2, section 37 of the Washington State Constitution, which states:

> No act shall ever be revised or amended by mere reference to its title, but the act revised or the section amended shall be set forth at full length.

In *Washington Educ. Ass'n v. State*, 93 Wn.2d 37,

40–41, 604 P.2d 950 (1980) we set forth a 2–part conjunctive test for determining if a law violates section 37:

Is the new enactment such a complete act that the scope of the rights or duties created or affected by the legislative action can be determined without referring to any other statute or enactment? *Naccarato v. Sullivan,* 46 Wn.2d 67, 74, 278 P.2d 641 (1955).

. . .

. . . Would a straightforward determination of the scope of rights or duties under the existing statutes be rendered erroneous by the new enactment? *Weyerhaeuser v. King County,* 91 Wn.2d 721, 731, 592 P.2d 1108 (1979).

Petitioners allege SHB 782 is amendatory of RCW 28B-.50.850–.869, as well as of RCW 28B.19 and RCW 28B.52. Unquestionably, SHB 782 affects the former statutory framework. Formerly, RCW 28B.50.850–.869 covered all tenured faculty dismissals for sufficient cause. Sufficient cause was not exhaustively defined, but neither was it limited to a narrow set of circumstances. Prior to the passage of SHB 782, dismissals for sufficient cause based on reductions in force presumably occurred pursuant to RCW 28B-.50.863. The collective bargaining agreements set out specific procedures for dismissal for sufficient economic cause, but those procedures were consistent with and seem to have been limited by RCW 28B.50.863.

SHB 782 provides procedures for specific RIF dismissals caused by two specific actions. These are the Governor's reduction in allotments or the Legislature's reduction in appropriation funds, which in turn causes the state board to declare a financial emergency. SHB 782 does not purport to cover all RIF dismissals, and those that occur for other reasons (*e.g.,* local finances, reduction in enrollment) will still occur as dismissals for "sufficient cause" pursuant to RCW 28B.50.863 and the collective bargaining agreements.

SHB 782 thus separates certain types of RIF dismissals from other dismissals for "sufficient cause" under RCW 28B.50.863. The major changes that occur under SHB 782 are that a hearing is conducted by a hearing officer (not the

tenure review committee as provided by RCW 28B.50.863) and the only issue at the hearing will be "under the applicable policies and agreements" are the faculty members subject to dismissal "the proper ones to be terminated." (RCW 28B.50.863 does not limit the issues for resolution.)

Notwithstanding these differences, respondents argue that since SHB 782 is a complete act, it does not have the infirmities which article 2, section 37 was designed to protect against. They argue that, by providing separate procedures for specific RIF dismissals, SHB 782 provides a comprehensive statute by which the "scope of the rights or duties created or affected by [SHB 782] can be determined without referring to any other statute or enactment". *Washington Educ. Ass'n*, at 40.

 Petitioners' claim that SHB 782 is not a complete statute because it cannot be understood without reference to other statutes is not well taken. SHB 782 does require reference to RCW 28A.58.455(4) (for choosing a hearing examiner), RCW 28B.19.120 and .150 (for hearing procedures and judicial appeal), and RCW 28B.50.850–.869 (to understand the meaning of tenure review committee), but such references are not the kind that make a statute incomplete. SHB 782 is, in this respect, what has been termed a "reference" statute, the object of which is to incorporate provisions of other acts by reference. *Steele v. State*, 85 Wn.2d 585, 537 P.2d 782 (1975). SHB 782 seems to pass the first part of the *Washington Educ. Ass'n* test. A faculty member subject to the RIF dismissals which are the subject of SHB 782 is fully apprised by the bill of his/her rights and the process to be afforded.

The second part of the *Washington Educ. Ass'n* test— whether a determination of rights and duties under existing statutes is "rendered erroneous" by SHB 782—is less easily surmounted. In a certain sense, those rights and duties are rendered erroneous. Looking only to RCW 28B.50.850–.869 a faculty member would assume all dismissals for sufficient cause fall under those provisions. Yet under SHB 782 specific RIF dismissals are treated differently. The procedural

rights under RCW 28B.50.863 would not reflect the actual procedures a faculty member would be subject to under SHB 782.

Respondents claim RCW 28B.50.850–.869 set forth only general provisions that do not comprehensively define "sufficient cause." These general provisions implicitly provide for future legislation to give specificity to the definition of "sufficient cause". Respondents cite *Nostrand v. Balmer,* 53 Wn.2d 460, 335 P.2d 10 (1959) as analogous to the situation here. There the court found supplementary (and not amendatory) legislation that specifically included "the Communist party" within the statutory definition of "subversive organization." SHB 782 does not simply provide a specific example of sufficient cause, however. It defines both a specific type of sufficient cause and the specific procedures that are applicable to it. While some of SHB 782's procedures are permissible in the absence of conflicting provisions in RCW 28B.50.850–.869, some are different from the provisions of RCW 28B.50.863 (*e.g.,* tenure review committee's role in rendering a recommendation).

■■ The question remains whether the confusion engendered by SHB 782 is simply an example of inartful but legitimate legislation or is an example of the bill's unconstitutionality. Our prior cases have found constitutional the modification of existing law by a complete statute. Discussing article 2, section 37, the court in *Spokane Grain & Fuel Co. v. Lyttaker,* 59 Wash. 76, 109 P. 316 (1910) stated:

> If the act is in itself complete and perfect, and is not amendatory and revisory in its character, it is not interdicted by this provision, although it amends by implication other legislation upon the same subject. Such an act, although it may operate to change or modify prior acts, is not within the mischief designed to be remedied by said section 22." [Or. equivalent to art. 2, § 37]

*Lyttaker,* at 80, quoting from *Warren v. Crosby,* 24 Or. 558, 561, 34 P. 661 (1893). The court went on to say of section 37:

It was not intended to prohibit the passage of a law which declared fully its provisions without direct reference to any other act, although its effect should be to enlarge or restrict the operation of some other statutes."

*Lyttaker,* at 80–81, quoting from *Snyder v. Compton,* 87 Tex. 374, 378, 28 S.W. 1061 (1894).

Undoubtedly, modification of existing laws by a complete statute renders the existing law by itself "erroneous" in a certain sense. Here SHB 782 "restricts the operation" of the existing provisions of RCW 28B.50 by providing special procedures for certain RIF dismissals. Nonetheless, SHB 782 will be codified within RCW 28B.50 and its modification of the existing statute should be apparent. Article 2, section 37 was designed to "protect the members of the legislature and the public against fraud and deception; not to trammel or hamper the legislature in the enactment of laws." *Spokane Grain & Fuel Co. v. Lyttaker, supra* at 82; *see Yelle v. Bishop,* 55 Wn.2d 286, 347 P.2d 1081 (1959). The purpose of SHB 782 is not hidden and, to the extent it fails to articulate how it relates to the rest of RCW 28B.50, its infirmities are not of constitutional magnitude.

## II

Petitioners also claim SHB 782 violates article 2, section 19 of the Washington State Constitution, which provides: "No bill shall embrace more than one subject, and that shall be expressed in the title."

The title of SHB 782 is "An Act Relating to Community Colleges". Petitioners allege such a title is too general and hides the bill's attempt to (i) restrict tenure rights; (ii) alter due process rights; and (iii) diminish contractual and statutory rights. In *Flanders v. Morris,* 88 Wn.2d 183, 187, 558 P.2d 769 (1977), we stated section 19 has a dual purpose:

(1) to prevent "logrolling", or pushing legislation through by attaching it to other necessary or desirable legislation, and (2) to assure that the members of the legislature and the public are generally aware of what is contained in proposed new laws.

While SHB 782 is not titled precisely, it does con-

cern matters relevant to community colleges. As we said in *Flanders,* at page 188:

> We have frequently stated that a title need not be an index to the contents of a bill. Where the title to any act expresses a single general subject or purpose, all matters which are naturally and reasonably connected with it, or any measures which will further its purpose, will be held to be germane.

*See Gruen v. State Tax Comm'n,* 35 Wn.2d 1, 22–23, 211 P.2d 651 (1949).

### III

Petitioners next argue SHB 782, which explicitly alters the terms of petitioners' collective bargaining agreement, violates article 1, section 23 of the Washington State Constitution, which provides: "No . . . law impairing the obligations of contracts shall ever be passed." Respondents argue RCW 28B.52.035 authorizes such a modification and that the statute is an implicit limitation on petitioners' contractual rights.

Petitioners contend RCW 28B.52.035 authorizes only modification of prospective negotiated agreements. While such an interpretation is plausible, respondents insist SHB 782 may immediately modify petitioners' negotiated agreements because the law was passed under the guise of the state's police power as

> necessary for the immediate preservation of the public peace, health, and safety, the support of the state government and its existing public institutions, and shall take effect immediately.

SHB 782, section 2. In *Ketcham v. King Cy. Med. Serv. Corp.,* 81 Wn.2d 565, 570, 502 P.2d 1197 (1972), we stated:

> Neither the due process clause nor the impairment of contract clause of either constitution overrides the power of the state to establish regulations that are reasonably necessary to secure the health, safety, good order, comfort or general welfare of the community. But the test is one of reasonableness. If the obligation of contract is to be impaired by the exercise of the police power, there must be a rational connection between the accomplish-

ment of the purpose and the means employed.

(Citations omitted.) The exercise of police power must be "reasonably necessary in the interest of the health, safety, morals and welfare of the people." *Ketcham,* at 576. When the state's financial emergency is measured against the right impaired, SHB 782 does modify petitioners' contractual rights, but (as will be seen) not substantially so.

## IV

Petitioners claim SHB 782 unlawfully deprives them of property interests in violation of due process. Initially, there is no dispute that petitioners' interest in continued employment is a "legitimate claim of entitlement", *Board of Regents v. Roth,* 408 U.S. 564, 33 L. Ed. 2d 548, 92 S. Ct. 2701 (1972), protected by the due process clause. The crucial question we face is whether the process afforded faculty members under SHB 782 is adequate. *See Logan v. Zimmerman Brush Co.,* __ U.S. __, 71 L. Ed. 2d 265, 102 S. Ct. 1148 (1982).

Petitioners first allege the process afforded under SHB 782 is not meaningful because of the following language in SHB 782:

The only issue to be determined shall be whether under the applicable policies, rules or collective bargaining agreement the particular faculty member or members advised of severance are the proper ones to be terminated.

Petitioners claim the above language limits a faculty member to asking "why he or she was dismissed rather than someone else" and "excludes consideration of the issue of financial emergency and the action of the local board of trustees." Brief of Petitioners, at 37. At oral argument, counsel for the petitioners characterized the issue which SHB 782 precludes as "the nexus of the financial emergency and these particular faculty dismissals."

Respondents argue petitioners interpret the statute too narrowly. They argue the term "proper ones" permits review of the "overall propriety" of the termination includ-

ing whether they were the proper ones because the budget cuts did not require dismissal of faculty or because the dismissal was for ulterior motives. At oral argument, counsel for the respondents did concede the bill intended to preclude from review the state and local boards' declaration of a financial emergency and, to the extent the need for cuts is established, the determination that cuts should occur in one area as opposed to another.

While each side's characterization of the statute does not lend itself to easy differentiation, both sides agree that if the scope of review under SHB 782 reflects the scope of review delineated in *Johnson v. Board of Regents,* 377 F. Supp. 227 (W.D. Wis. 1974) they would be satisfied. In *Johnson,* the court examined a lay–off procedure for financial exigencies remarkably similar to that presented in SHB 782. It felt that while policy considerations may argue otherwise, the Fourteenth Amendment did not require faculty participation in decisions regarding reductions in force at the following stages: at the gubernatorial and legislative level; at the regents and central administration level; and at the local chancellor level (in declaring an emergency and deciding which budget areas require reduction). SHB 782 contains similar levels of decisionmaking: the Governor or Legislature orders reductions; the state board declares an emergency, and the local board follows suit. At each of these "non–adjudicatory" levels, due process does not require faculty participation.

The *Johnson* court viewed as "adjudicatory" the ultimate decision about which faculty members would be dismissed. The court held due process entitles a faculty member to demonstrate:

(1) that the true reason for his or her lay–off was a constitutionally impermissible reason; or (2) that, given the chain of decisions which preceded the ultimate decision designating him or her by name for lay–off, that ultimate decision was nevertheless wholly arbitrary and unreasonable.

*Johnson,* at 240. SHB 782 offers the same substantive pro-

tection to faculty members in community colleges. They are not "the proper ones to be terminated" if the dismissal is based on ulterior motives, if the budget cuts do not require dismissals, if no money would be saved by dismissals or if the choice of who is to be dismissed is improper under the applicable policies, rules or collective bargaining agreements.

Petitioners are thus incorrect in assuming SHB 782 precludes review of the nexus of the declared financial emergency and the particular faculty dismissals. If no nexus exists, termination is "arbitrary and unreasonable." Petitioners may not challenge "the chain of decisions" that lead to a notice of dismissal, but if such notice is unrelated to that chain of decisions the faculty member is not the "proper [one] to be terminated."

We do not believe the breadth of review afforded petitioners prior to the enactment of SHB 782 was any greater (*e.g.*, the collective bargaining agreement stated the "only issue" in dismissals for sufficient economic cause was "whether there is sufficient cause to believe that the dismissal is justified for the reasons stated in the notice"). Nor do we feel the breadth of review under SHB 782 was intended to be any less broad.

The procedures of SHB 782 are otherwise comprehensive and pass minimum requirements of due process. They provide for notice of the basis for and nature of the dismissal and an opportunity to be heard and they provide for a full adjudicatory hearing. Petitioners nevertheless argue the bill has fundamental defects of process.

First, SHB 782 does not mention a right to appeal to a court from the dismissal hearing. The *Johnson* court held minimum due process requires a right of appeal to a court. Such a right of appeal in SHB 782 may reasonably be inferred from SHB 782's reference to RCW 28B.19.120, and respondents concede such a right.

Second, petitioners argue each faculty member's due process right to a hearing is undermined by SHB 782's requirement that all faculty members given notice of a dis-

missal "must act collectively" in making a request for a hearing. Petitioners apparently interpret this language to mean any one faculty member may veto the hearing. This is not the intent of SHB 782. It intends only to consolidate individual termination hearings; and one faculty member's decision not to request a hearing does not affect other faculty members' rights to individual process.

█ Petitioners also claim SHB 782 violates the appearance of fairness doctrine because the district board must assume the combined roles of investigator in deciding reductions in force are necessary and adjudicator in being responsible for final action on dismissals. Petitioners' fairness claim is without merit. The board's initial policy decision that RIF's are necessary is hardly investigatory. The board's role is the same under SHB 782 as under the collective bargaining agreement. Its role reflects only that it must be both policy maker and final arbiter of reductions in force. Such a role does not violate administrative due process. *See Hortonville Joint Sch. Dist. 1 v. Hortonville Educ. Ass'n*, 426 U.S. 482, 49 L. Ed. 2d 1, 96 S. Ct. 2308 (1976); *Withrow v. Larkin*, 421 U.S. 35, 43 L. Ed. 2d 712, 95 S. Ct. 1456 (1975); K. Davis, *Administrative Law* § 13.03 (1978).

## V

Finally, petitioners claim SHB 782 violates equal protection by treating community colleges differently from other universities within the system. The parties agree on the relevant equal protection test:

First, does the classification apply alike to all members within the designated class? . . .

Second, does some basis in reality exist for reasonably distinguishing between those within and without the designated class? More specifically, do reasonable grounds exist to support the classification's distinction between those within and without the class? . . .

Third, does the challenged classification have any rational relation to the purposes of the challenged statute? . . . More specifically, does the difference in treatment between those within and without the designated

class serve the purposes intended by the legislation? *Yakima Cy. Deputy Sheriff's Ass'n v. Board of Comm'rs*, 92 Wn.2d 831, 835–36, 601 P.2d 936 (1979).

SHB 782 does apply to all members of the community college faculty but petitioners argue there is no reasonable basis for distinguishing community college faculty from other university faculties. Respondents argue a reasonable basis exists in that community colleges have been treated separately within the statutory framework and no other tenure provisions exist within the statutes addressing higher education.

■ SHB 782 is a reasonable legislative response to the existing community college tenure provisions and the current financial crisis. It would seem to serve the purpose of providing a uniform RIF dismissal procedure in the event of financial emergency. The constitution does not require the Legislature to provide uniform laws regarding tenure for all colleges. *Dandridge v. Williams*, 397 U.S. 471, 485, 25 L. Ed. 2d 491, 90 S. Ct. 1153 (1970).

■ We affirm the constitutionality of SHB 782 and reject the various challenges formulated by petitioners.

### APPENDIX

#### Substitute House Bill No. 782

AN ACT Relating to community colleges; creating new sections; adding a new section to chapter 283, Laws of 1969 ex. sess. and to chapter 28B-.50 RCW; and declaring an emergency.

BE IT ENACTED BY THE LEGISLATURE OF THE STATE OF WASHINGTON;

NEW SECTION. Section 1. There is added to chapter 283, Laws of 1969 ex. sess. and to chapter 28B.50 RCW a new section to read as follows:

The state board for community college education may declare a financial emergency under the following conditions: (1) Reduction of allotments by the governor pursuant to RCW 43.88.110(2), or (2) reduction by the legislature from one biennium to the next or within a biennium of appropriated funds based on constant dollars using the implicit price deflator. When a district board of trustees determines that a reduction in force of tenured or probationary faculty members may be necessary due

to financial emergency as declared by the state board, written notice of the reduction in force and separation from employment shall be given the faculty members so affected by the president or district president as the case may be. Said notice shall clearly indicate that separation is not due to the job performance of the employee and hence is without prejudice to such employee and need only state in addition the basis for the reduction in force as one or more of the reasons enumerated in subsections (1) and (2) of this section.

Said tenured or probationary faculty members will have a right to request a formal hearing when being dismissed pursuant to subsections (1) and (2) of this section. The only issue to be determined shall be whether under the applicable policies, rules or collective bargaining agreement the particular faculty member or members advised of severance are the proper ones to be terminated. Said hearing shall be initiated by filing a written request therefor with the president or district president, as the case may be, within ten days after issuance of such notice. At such formal hearing the tenure review committee provided for in RCW 28B.50.863 may observe the formal hearing procedure and after the conclusion of such hearing offer its recommended decision for consideration by the hearing officer. Failure to timely request such a hearing shall cause separation from service of such faculty members so notified on the effective date as stated in the notice, regardless of the duration of any individual employment contract.

Said hearing shall be a formal hearing pursuant to RCW 28B.19.120 conducted by a hearing officer appointed by the board of trustees and shall be concluded by the hearing officer within sixty days after written notice of the reduction in force has been issued. Ten days written notice of the formal hearing will be given to faculty members who have requested such a hearing by the president or district president as the case may be. The hearing officer within ten days after conclusion of such formal hearing shall prepare findings, conclusions of law and a recommended decision which shall be forwarded to the board of trustees for its final action thereon. Any such determination by the hearing officer under this section shall not be subject to further tenure review committee action as otherwise provided in this chapter.

Notwithstanding any other provision of this section, at the time of a faculty member or members request for formal hearing said faculty member or members may ask for participation in the choosing of the hearing officer in the manner provided in RCW 28A.58.455(4), said employee therein being a faculty member for the purposes hereof and said board of directors therein being the board of trustees for the purposes hereof: PROVIDED, That where there is more than one faculty member affected by the board of trustees' reduction in force such faculty members requesting hearing must act collectively in making such request: PROVIDED FURTHER, That costs incurred for the services and

expenses of such hearing officer shall be shared equally by the community college and the faculty member or faculty members requesting hearing.

When more than one faculty member is notified of termination because of a reduction in force as provided in this section, hearings for all such faculty members requesting formal hearing shall be consolidated and only one such hearing for the affected faculty members shall be held, and such consolidated hearing shall be concluded within the time frame set forth herein.

Separation from service without prejudice after formal hearing under the provisions of this section shall become effective upon final action by the board of trustees.

It is the intent of the legislature by enactment of this section and in accordance with RCW 28B.52.035, to modify any collective bargaining agreements in effect, or any conflicting board policies or rules, so that any reductions in force which take place after this section becomes effective, whether in progress or to be initiated, will comply solely with the provisions of this section: PROVIDED, That any applicable policies, rules, or provisions contained in a collective bargaining agreement related to lay-off units, seniority and re-employment rights shall not be affected by the provisions of this paragraph.

Nothing in this section shall be construed to affect the right of the board of trustees or its designated appointing authority not to renew a probationary faculty appointment pursuant to RCW 28B.50.857.

NEW SECTION. Sec. 2. This act is necessary for the immediate preservation of the public peace, health, and safety, the support of the state government and its existing public institutions, and shall take effect immediately.

NEW SECTION. Sec. 3. If any provision of this act or its application to any person or circumstance is held invalid, the remainder of the act or the application of the provision to other persons or circumstances is not affected.

BRACHTENBACH, C.J., and ROSELLINI, STAFFORD, DOLLIVER, WILLIAMS, DORE, DIMMICK, and PEARSON, JJ., concur.